# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

COLONIAL CHAPEL, INC.; BROOKHAVEN FUNERAL
HOME, INC.; COLONIAL CHAPEL OF JONES AND
COVINGTON COUNTY, INC.; UPTON-MIMS MITCHELL
FUNERAL HOMES, INC.; COLONIAL CHAPEL OF BAY
SPRINGS AND RALEIGH AND FOREST, INC.; CAPPS
FUNERAL HOME, INC.; WILSON FUNERAL HOME, INC.;
JOHN E. PEARCE; and CHARLOTTE PEARCE                     PLAINTIFFS

VERSUS                                    CIVIL ACTION NO. 2:08cv167KS-MTP

SECURITY NATIONAL LIFE INSURANCE COMPANY                 DEFENDANT


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#18]** seeking a declaratory judgment filed on behalf of the plaintiffs.  The court, having reviewed the motion, the response, the pleadings and exhibits on file, the briefs of counsel, the authorities cited, and being otherwise fully advised in the premises finds that the Motion should be granted as hereinafter delineated.  The court specifically finds as follows:

## FACTUAL BACKGROUND

The corporate plaintiffs herein are funeral homes, the stock of which is owned by the individual plaintiffs.  Some of the plaintiffs entered into an Agency Agreement on November 5, 1998, with Gulf National Insurance Company establishing an exclusive insurance relationship with Gulf National for pre-need funeral contracts, industrial

insurance policies, and funeral cash trusts invested in insurance policies.  The Agency Agreement designates Charlotte Pearce as and agent of Gulf National.  As compensation for the sale, service and collection of premiums due on the policies, the Agent was paid commissions.  The term of the Agency Agreement commenced on the date of execution, November 5, 1998, and provided that it would "terminate five (5) years from said date unless extended by mutual agreement of the parties . . .."  The Agency Agreement also contains terms the defendant contends are not limited by the five year term.

Certain of the plaintiffs also signed an Agreement to Purchase Group Master Insurance Policies and Establish Agency Relationship on October 26, 1998.  This Agreement, which contains no separate termination date, provides that during the term of the Agency Agreement, Gulf National shall be the exclusive insurance company for all insurance-funded policies sold by the plaintiffs.  It also provides, in part, in Paragraph 1:

> Colonial hereby agrees to use its best efforts to cause all trustees of Trust Funds to purchase from GNL in exchange for the Trust Funds, the Policies, after obtaining written approval from all Chancery Courts supervising and having jurisdiction over the Trust Funds.

Some of the plaintiffs also entered an Amended Agreement Not to Compete on November 5, 1998.  This document prohibited the plaintiffs from selling any insurance services on behalf of any company other than Gulf National without its written consent during the term of the Agency Agreement.  All of these Agreements were assigned from Gulf National on or about June 15, 2001, to Acadian Life Insurance Company and from Acadian to the defendant, Security National, on or about December 23, 2002.  The

defendant is now the successor in interest to all of the aforementioned Agreements.

As part of their funeral home operations, the plaintiffs sell pre-need funeral insurance contracts. This is a business which is heavily regulated by state law. Mississippi statutes require a portion of the premiums collected through sales of pre-need policies be placed in trust, to be supervised by an independent trustee. Regions National Bank currently serves as the trustee for the trust funds collected from premiums on policies sold by the plaintiffs.

The actual investment of the premiums managed by the trustee for all policies sold by the plaintiffs prior to 2007 are invested in insurance policies issued by Security National. The plaintiffs assert that Security National, in turn, has largely invested the funds in mortgage-backed securities and corporate bonds.

The Agency Agreement was scheduled to expire on November 3, 2003. Prior to that time, the parties attempted to agree on a written extension of the Agreements. Attorney Gene Wilkerson prepared a draft for a proposed extension agreement on October 23, 2003. This agreement was never executed by either party, even though the parties did agree in writing to extend the "existing arrangement" until December 10, 2003.

In fact , after being unable to agree on a written extension, the parties continued operating under the Agreements until 2007. On March 20, 2007, the defendant notified the plaintiffs that it would no longer accept new applications for pre-need policies from the plaintiffs after April 10, 2007. The defendant also advised the plaintiffs, by letter of July 23, 2007, that the aforesaid Agreements prohibited the plaintiffs from "inducing any policy owner to convert or surrender his insurance with Security National." The plaintiffs

thus contend that if the Agreements remain in force, they cannot "conduct free and open discussions with the trustee concerning handling of the trust funds." The Complaint filed herein is an attempt by the plaintiffs to obtain an interpretation of whether the previously described Agreements remain in force.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*,

799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants'

motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **MISSISSIPPI LAW ON CONTRACT INTERPRETATION**

The parties agree that all of the Agreements are governed by Mississippi law. The plaintiffs argue that Mississippi law is clear as to the rights of the parties when

dealing with contracts of indefinite duration, or with contracts continuing on by mutual agreement after a specified termination date. They assert that such contracts are considered "at will" agreements terminable by either party upon reasonable notice.

The defendant argues in response first, that the Agreements include provisions which are perpetual and extend forever and, second, that the five year duration clause in the Agency Agreement contains the modifier "unless extended by mutual agreement of the parties."

The Mississippi Supreme Court has recently held that in interpreting contracts:

We are reminded that "[t]he primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." *Facilities, Inc. v. Rogers–Usry Chevrolet, Inc.*, 908 So.2d 107, 110 (Miss.2005) (quoting *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748, 752 (Miss.2003)). In order to determine and record the intent of the contracting parties, we focus upon the objective language of the contract. *Id.* at 110–111. Additionally, concerning the construction of contracts, this Court has consistently stated:

> This Court has set out a three-tiered approach to contract interpretation. *Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 351-53 (Miss.1990). Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. [*Cooper v. Crabb*, 587 So.2d 236, 241 (Miss.1991)....] First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. *Pursue Energy Corp.*, 558 So.2d at 352 (citing *Pfisterer v. Noble*, 320 So.2d 383, 384 (Miss.1975)). We must look to the "four corners" of the contract whenever possible to determine how to interpret it. *McKee v. McKee*, 568 So.2d 262, 266 (Miss.1990). When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. *Brown v. Hartford Ins. Co.*, 606 So.2d 122, 126 (Miss.1992). Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. *Simmons v. Bank of Miss.*, 593 So.2d 40, 42-43 (Miss.1992). Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. *Id.* (citing *Cooper*, 587 So.2d at 241). On the other hand, if

> the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." *Pursue Energy Corp.*, 558 So.2d at 352. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. *Id.* "The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Turner*, 799 So.2d at 32; *Cherry v. Anthony*, 501 So.2d 416, 419 (Miss.1987).
>
> Secondly, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. *Pursue Energy Corp.*, 558 So.2d at 352. Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. *Leach v. Tingle*, 586 So.2d 799, 801-02 (Miss.1991) (citing *Stampley v. Gilbert*, 332 So.2d 61, 63 (Miss.1976)). Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. [*Pursue Energy Corp.*, 558 So.2d at 353]. It is only when the review of a contract reaches this point that prior negotiation, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.
>
> *Royer*, 857 So.2d at 752–53 (emphasis added).
>
> *Facilities, Inc.*, 908 So.2d at 111

*One South, Inc. v. Hollowell*, 963 So.2d 1156, 1162-63 (Miss. 2007).

Thus, when the language of a contract is clear and unambiguous, parol testimony is inadmissible to contradict the language of the contract. *Aron v. Panola-quitman grain Corporation*, 490 So.2d 891, 892 (Miss. 1986); citing *Smith v. Falke*, 474 So.2d 1044 (Miss. 1985). Parol evidence may be admissible to show the intent of the parties which is unclear from the four corners of the document. *See id.* at 493. Ambiguity arises when a reasonable person could have understood the terms of a contract to have more than one reasonable meaning. *Crisler v Crisler*, 963 So.2d 1248, 1252 (Miss. Ct. App. 2007); citing *Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714

(Miss. 2004).

## ANALYSIS

**Agency Agreement**

The defendant contends that the various Agreements contain numerous ambiguities which preclude summary judgment. First, the defendant argues that the Agency Agreement contained the aforementioned "unless extended by mutual agreement of the parties" language as a modifier of the five year duration clause and that the parties extended the five year term of the Agreement by mutual agreement. This so called "mutual agreement" is allegedly manifested by the written and oral communications of the parties prior to the expiration of the original term and the subsequent course of conduct of the parties. The defendant then suggests that whether the parties reached a mutual agreement to extend the Agency Agreement is ambiguous and subject to parol evidence on the issue.

There was no mutual agreement to extend the Agency Agreement. A review of the correspondence between the parties in late 2003 clearly indicates that the parties attempted such an agreement to extend but were unable to memorialize same. Indeed, John Pearce's letter of December 11, 2003, in response to Security National's President Scott Quist's December 3d letter clearly states that he is in disagreement with one of the primary terms of the extension agreement related to how the trustee invests trust assets.

Scott Quist testified that he considered that John Pearce had agreed to an

extension of the contracts beyond the end of 2003 between January 3, 2003, and July 2, 2003, in phone and personal communications and correspondence.  However, the record is undisputed that later in the year John Pearce and Quist agreed in writing to extend the Agreements from their expiration on November 3, 2003, until December 10, 2003.  There would have been no necessity to do this if Pearce had previously agreed to such an extension.  Then, on December 11, 2003, Pearce plainly refused an extension of the contracts on the terms offered by Quist in his December 3, 2003, letter and as set forth in the proposed extension agreement prepared by Gene Wilkerson on October 23, 2003.

To assert that there is an ambiguity in the term "mutual agreement" as contained in the Agency Agreement is disingenuous.  Mutual agreement means that both parties had to agree to the specific terms of a definite extension.  Pearce clearly refuted such agreement in his December 11, 2003, letter.  There is no need for parol evidence on this issue.  Further, Paragraph 23 of the Agency Agreement provides, "This Agreement shall not be amended except by written amendment signed by all parties hereto.  Parol evidence shall not be admitted to control, vary or otherwise modify the express terms contained herein."

However, it is also clear that through the course of conduct of the parties, they chose to continue to operate under the expired Agency Agreement as they had in the past.  This does not equate to giving the Agreement "perpetual" life as argued for by the defendant.  Indeed, the court agrees with the plaintiffs that the parties simply continued their relationship "at will."  Such a relationship can be terminated by either party upon reasonable notice.  *See Roberts v. Southern Wood Piedmont Company*, 571 F.2d 276

(5th Cir. 1978). Security National, in fact, did just that. It terminated the agreements by its letter of March 20, 2007. To argue that the Agreement was "perpetual" after having unilaterally terminated it is, once again, disingenuous.

The defendant then argues that the Agency Agreement contains paragraphs which are not subject to the five year duration clause. Specifically, defendant claims that the non-interference provision in Paragraph 19 is not limited by language in other parts of the Agreement stating "during the term of this agreement." The defendant also points out several paragraphs dealing with agent and company actions and obligations after the termination of the Agreement .

The court disagrees with the defendant. The Agency Agreement terminated by its terms subject to the written extension on December 10, 2003. The parties continued an at will relationship past that point making the relationship terminable by either party upon reasonable notice. Security National provided that notice on March 20, 2007. There is no ambiguity and no issue of material fact in dispute in this regard.

**Agreement to Purchase Group Master Insurance Policies and to Establish Agency Relationship**

The defendant next argues that the Agreement to Purchase Group Master Insurance Policies and to Establish Agency Relationship executed by the parties on October 26, 1998, does not contain a termination date. The plaintiff does not disagree but simply argues that this Agreement refers to the five year term of the Agency Agreement and incorporates it by reference.

This Agreement expressed two intents: 1) that the parties were desirous of using accumulated Trust Funds acquired by the plaintiffs previous to the Agreement to purchase GNL (now Security National) policies to fund the Pre-need contracts; and 2) that the parties were desirous of entering into an Agency relationship with respect to all future insurance operations of the plaintiffs. The essence of the restrictions on the plaintiffs in this Agreement, according to the defendant, is that it prohibits the plaintiff from encouraging the trustee to replace the Security National policies purchased with trust funds with another company's offerings. Specifically, Paragraph 1 provides, in part:

> Colonial hereby agrees to use its best efforts to cause all trustees of Trust Funds to purchase from GNL in exchange for the Trust Funds, the Policies, after obtaining written approval from all Chancery Courts supervising and having jurisdiction over the Trust Funds.

Paragraph 2 of the Agreement does contain a provision that for five years after the date of the Agreement the defendant would maintain all Trust Funds received as premium payments in a banking institution selected by the plaintiffs. Paragraph 5.1 acknowledges that the parties were to enter into a separate Agency Agreement with a duration of five years and that for the duration of the Agency Agreement, GNL (Security National) would be the exclusive insurance company providing funding for all insurance-funded Pre-need contracts or other insurance contracts sold by the plaintiffs.

A careful review of this document convinces the court that it has not expired in its entirety even though its remaining viability in the face of the expired Agency Agreement is in serious doubt. However, it contains no expiration date as to Paragraph 1 which provides that the plaintiffs shall use their best efforts to cause the trustee to purchase

Security National policies as it relates to policies issued during the duration of the Agency Agreement. In fact, the plaintiffs do not argue that this Agreement has expired, but they nevertheless argue that because the other two Agreements have expired, they are entitled to a declaration that they can engage the trustee and encourage it to seek other investments of the Trust Funds. This provision does not strictly preclude the plaintiffs from that course of action but perhaps they undertake such action at their peril.

However, the court is also of the opinion that this Agreement has expired as to the requirements of Paragraphs 2 and 5 which are tied to the Agency Agreement. Paragraph 2 required a five year segregation of trust funds and Paragraph 5 required the plaintiffs to use Security National exclusively for the funding of all Pre-needs or other insurance sold by the plaintiffs. There is no issue of material fact in dispute in this regard, and the parties are entitled to a declaration of such.

**Amended Agreement Not to Compete**

Finally, the defendant argues that the Amended Agreement Not to Compete executed by the plaintiffs on November 5, 1998, has no termination date. However, Paragraph 1 provides, in pertinent part:

> . . . for a period of five (5) years from and after the closing of the aforesaid agreements, . . ., within a radius of thirty (30) miles . . . engage, either directly or indirectly in the sale of industrial life insurance, other funeral insurance . . ., pre-need contracts, ordinary life insurance, annuities, or any other similar or related products or services for or on behalf of any company or other entity , other than GNL . . .."

Amended Agreement Not to Compete, Paragraph 1.

Clearly, this Agreement was for a definite duration of five years from the date of closing as to the Agency Agreement. The court has already concluded that the Agency Agreement was not extended except as an at will relationship. The same holds true for this document. It terminated along with the Agency Agreement on March 20, 2007. The plaintiffs are not bound by the covenant not to compete.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#18]** filed by the plaintiff for a declaratory judgment is granted and the court finds and declares that the Agency Agreement entered by the parties on November 5, 1998, has terminated as of March 20, 2007; that the Amended Covenant Not to Compete entered by the parties on November 5, 1998, has terminated as of March 20, 2007; that the Agreement to Purchase Group Master Policies and to Establish Agency Relationship entered by the parties on October 26, 1998, has terminated as of March 20, 2007, as to Paragraphs 2 and 5 and any other terms directly related to and derivative of the Agency Agreement which terminated on March 20, 2007, and that otherwise this Agreement has not terminated; and that this matter is dismissed with prejudice and that all other pending motions are denied as moot.

SO ORDERED AND ADJUDGED this the 24th day of July, 2009.

*s/ Keith Starrett*  
UNITED STATES DISTRICT JUDGE